JL

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sardarbek Dzhuraev, | No.   CV-26-00438-PHX-SHD (JZB) |
| Petitioner, | |
| v. | **ORDER** |
| Pamela Bondi, et al., | |
| Respondents. | |

Petitioner filed this action under 28 U.S.C. § 2241 challenging his immigration detention.  (Doc. 1.)  In his Petition, Petitioner alleged that he entered the United States in June 2023 to seek asylum.  (*Id.* ¶ 48.)  Petitioner alleged that Respondents released him on his own recognizance.  (*Id.*)  Petitioner alleged that he was re-detained in October 2025. (*Id.* ¶ 52.)  The Court directed Respondents to answer the Petition[1] and permitted Petitioner to file a reply.  (Doc. 3.)  Petitioner filed an Amended Petition.  (Doc. 4.)  Respondents filed a Response to the Amended Petition.  (Doc. 5.)  Upon review of the briefing, the Court will grant the Amended Petition and direct Petitioner's immediate release from custody.

**I.    Background**

Petitioner Dzhuraev is a native and citizen of Russia.  (Doc. 4 ¶ 45.)  On June 19, 2023, Petitioner arrived at the Delgado, Texas point of entry to seek asylum.  (*Id.* ¶ 48.)

---

[1]    Although the Court's Order directing Respondents to answer the Petition instructed them to support their response with documentary evidence including, if applicable, affidavits signed under penalty of perjury by individuals with personal knowledge of the factual statements made therein, Respondents submitted no documentary evidence with their response.

Respondents paroled Petitioner into the United States pursuant to 8 U.S.C. § 1182(d)(5) and released him from custody. (*Id.*) Respondents initiated removal proceedings against Petitioner by filing a Notice to Appear. (*Id.* ¶ 49.) Petitioner applied for asylum before the Chicago Immigration Court. (*Id.* ¶ 50.) Respondents asserted that Petitioner was inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I). (*Id.* ¶ 51.) Petitioner was ordered to appear for a hearing before an Immigration Judge on July 21, 2025. (*Id.*)

On October 29, 2025, Petitioner was detained by immigration officials and transported to Eloy, Arizona. (*Id.* ¶ 52.) Petitioner has remained in detention since then. (*Id.* ¶ 54.)

## II.    Discussion

In the Amended Petition, Petitioner asserts that his detention violates his rights under the Due Process Clause of the Fifth Amendment. (*Id.* ¶ 68.) He contends Respondents have "chosen to revoke [his] release in an arbitrary manner and not based on a rational and individualized determination of whether he is a safety or flight risk." (*Id.* ¶ 73.) Petitioner also argues that his detention violates his substantive right to due process because he is not a flight risk or a danger to the community, and his detention is therefore "unjustified and unlawful." (*Id.* ¶ 77.) Petitioner further asserts that "[b]y categorically revoking Petitioner's parole and detaining Petitioner without consideration of Petitioner's individualized facts and circumstances, Respondents have violated the [Immigration and Nationality Act], implementing regulations, and the [Administrative Procedures Act]." (*Id.* ¶ 84.)

Respondents contend that "the statute and applicable regulations require Petitioner's detention without bond through the completion of his removal proceedings." (Doc. 5 at 4.) They argue that "'entry' into the United States requires more than simply arriving on American soil. For example, an alien who 'arrives at a port of entry—for example, an international airport— . . . is on U. S. soil, but the alien is not considered to have entered the country for the purposes of this rule.'" (*Id.* (citation omitted).) Under this "entry fiction doctrine," aliens who present at ports of entry are treated as though they have not entered

the United States.  (*Id.* at 5.)  Respondents assert that because Petitioner presented himself for inspection at a port of entry, he "cannot be said to have effected an entry," and he must be treated accordingly.  (*Id.*)  They contend that "[s]tatutes and case law combine to show that an alien is subject to detention under Section 1225(b)(2)(A) when, like Petitioner, they present at a port of entry for inspection, even if they are paroled thereafter."  (*Id.*)

Respondents also argue that "as an alien subject to the 'entry fiction,' Petitioner is not entitled to any procedure beyond that which is prescribed by statute."  (*Id.* at 6.)  They assert that "Petitioner's claim to procedural due process rights must fail because he is considered legally not to have entered the United States, even though he is physically present here."  (*Id.*)  Respondents note that Petitioner's parole had already terminated by the time he was detained in October 2025 because it had expired by its own terms on April 18, 2025.  (*Id.*; *see* Doc. 1-1 at 1.)  Respondents contend "[b]ecause Petitioner was not detained again until October 29, 2025," Respondents "had no need to revoke his parole beforehand because his parole had already terminated by operation of law."  (Doc. 5 at 6.)  Respondents further argue that Petitioner's substantive due process claim "has no grounding in law."  (*Id.* at 7.)  They assert that "[t]he INA does not create any liberty interest in temporary parole that is protected by the Fifth Amendment.  Rather, the statute makes clear that whether and for how long temporary parole is granted are matters entirely within the discretion of the Attorney General."  (*Id.*)

The district court in *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. 25-10676-BEM, 2026 WL 521557 (D. Mass. Feb. 25, 2026), recently explained why the "entry fiction" urged by Respondents does not foreclose Petitioner's due process claim as to his present detention.  According to the "entry-fiction doctrine," "aliens who arrive at ports of entry . . . are treated for due process purposes as if stopped at the border and thus ha[ve] only those rights regarding admission that Congress has provided by statute."  *Id.* (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020) (internal quotation marks omitted)).  The district court in *D.V.D.* noted that in cases that provide an exception to the otherwise "geographic" scope of the Due Process Clause, "the due process rights impacted

are only those 'regarding admission.'" *Id.* at *30 (quoting *Thuraissigiam*, 591 U.S. at 140). "This distinction arises near the very inception of the entry-fiction case law." *Id.* In *Wong Wing v. United States*, 163 U.S. 228 (1896), the Supreme Court "contrasted the case of an immigrant who could not challenge his immigration officer's 'exclusive authority to determine whether a particular alien seeking admission into this country' was so entitled, with another who could challenge, on due process grounds, the imposition of an immigration-related term of hard labor." *Id.* (quoting *Wong Wing*, 163 U.S. at 232–33, 235–38). The district court noted that although *Wong Wing* "presented the particularly egregious circumstance of an 'infamous punishment,'" the Supreme Court expressed its holding in terms of the broader protections afforded by the Due Process Clause:

> Applying this reasoning to the fifth and sixth amendments, it must be concluded that all persons within the territory of the United States are entitled to the protection [guaranteed] by those amendments, and that even aliens shall not be held to answer for a capital or other infamous crime, unless on a presentment or indictment of a grand jury, nor be deprived of life, liberty, or property without due process of law.

*Id.* (quoting *Wong Wing*, 158 U.S. at 238). The court observed that "[i]t makes sense to distinguish between 'rights regarding admission' and other interests that might be protected by the Due Process Clause." *Id.* (citing *Thuraissigiam*, 591 U.S. at 140).

"The Government's countervailing interest, in the entry-fiction context, is its sovereign authority to 'admit [noncitizens] only in such cases . . . as it may see fit.'" *Id.* (citation omitted). "Where that sovereign prerogative is not implicated, however, the legal fiction loses its justification." *Id.* (citing *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001)). "Unsurprisingly then, more than a century of Supreme Court case law confirms that the proper application of an entry fiction, where otherwise appropriate, is to preserve the Government's authority over the determination of a noncitizen's *admissibility*." *Id.* (emphasis in original). Accordingly, where an immigration detainee challenges neither his order of removal nor any of the processes that produced those orders, his claims "do not implicate, nor even "relate[] to," the issue of [his] admissibility." *See id.* at *31 (citing

- 4 -

*Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021)). Petitioner is a "'person[]' within the United States," and the Fifth Amendment therefore "imposes constraints" on any process that deprives his of his liberty interests. *Id.* (citations omitted).

The Court notes a growing number of cases hold that individuals like Petitioner who were released from immigration detention on an order of recognizance are entitled to a pre-deprivation hearing prior to any rearrest or detention as a matter of due process. *See*, *e.g.*, *Tinoco v. Noem*, ___ F. Supp. 3d ___, 2025 WL 3567862, at *2, *5-7 (E.D. Cal. Dec. 14, 2025) (granting petitioner's temporary restraining order for immediate release from custody where petitioner was released on an order of release on recognizance, re-detained three years later, and was not given a bond hearing); *Rico-Tapia v. Smith*, 806 F. Supp. 3d 1166, 1182-84 (D. Haw. 2025) (same); *Aguirre Solis v. Noem*, 2:26-cv-00053-RFB-EJY, 2026 WL 396432, at *2, *5 (D. Nev. Feb. 12, 2026) (concluding petitioner's re-detention after release on recognizance without a hearing and opportunity for release was unlawful under the INA and the Due Process Clause of the Fifth Amendment and ordering his immediate release from detention).

The three-pronged test articulated in *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)—which Respondents do not address—explains "[t]he fundamental requirement of [procedural] due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). To determine whether procedural protections satisfy the Due Process Clause, courts consider three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

As to the first factor, being free from physical detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525, (2004) (directing courts, when assessing the first *Mathews* factor, to consider only the petitioner's interests at stake in

ongoing detention without consideration of the respondents' justifications for the detention). An individual's interest in being free from detention "lies at the heart of the liberty that [the Due Process] Clause protects"). *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). The first *Mathews* factor favors Petitioner.

As to the second factor, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the Petitioner] has not received any bond or custody redetermination hearing." *Dushyant v. Albarran*, No. 1:26-cv-00502-JLT-SKO (HC), 2026 WL 682887, at *4 (E.D. Cal. Mar. 11, 2026) (citation omitted). "Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." *Id.* (citing *Zadvydas*, 533 U.S. at 690; *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023)). No neutral arbiter has determined whether the facts show that Petitioner is a flight risk or danger to the community. "Given the absence of any procedural safeguards to determine if his detention was justified, 'the probable value of additional procedural safeguards, i.e., a bond hearing, is high.'" *Id.* (citation omitted). The Court concludes there is a risk of erroneous deprivation if no facts are provided to justify the re-detention of individuals without a neutral decisionmaker first evaluating whether re-detention is warranted. The second *Mathews* factor weighs in favor of Petitioner.

Finally, as to the third *Mathews* factor, "[i]f the government wishes to re-arrest [a petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Further, detention hearings in immigration courts are commonplace and impose a "minimal cost." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). And Respondents' interest here is even lower because Petitioner was previously released

on parole after immigration officials necessarily determined he was not a flight risk or danger to the community, and there is no indication Petitioner violated any condition of his parole. *See Pinchi v. Noem*, No. 25cv05632-RMI, 2025 WL 1853763, at *2 (N.D. Cal. July 4, 2025); *see also Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. July 11, 2025) ("On balance, the *Mathews* factors show that petitioner is entitled to process, and that process should have been provided before petitioner was detained."); *Telenchana v. Hermosillo*, 2:26-cv-00363-GJL, 2026 WL 696806, at *9 (W.D. Wash. Mar. 12, 2026) (concluding that re-detention of petitioners who had been released on their own recognizance violated due process under the *Mathews* framework because petitioners had "established liberty interests," "the absence of pre-deprivation procedures in their re-detentions created an unacceptably high risk of erroneous deprivations, and "the governmental interest in their re-detention without adequate process [was] minimal or non-existent").

The Court finds that the *Mathews* factors weigh in favor of determining Petitioner was entitled to a hearing before he was re-detained. The Court finds that immediate release, rather than requiring another bond hearing, is the appropriate remedy. *See Ruiz v. Noem*, No. 3:25-CV-03536-RBM-BJW, 2025 WL 3719888, at *2 (S.D. Cal. Dec. 23, 2025) ("[G]iven Respondents' 'weighty' interest in the 'efficient administration of the immigration laws,' *Landon v. Plasencia*, 459 U.S. 21, 34 (1982), it does not make sense to require Respondents to set a new bond hearing before a potentially new immigration judge just to duplicate the same efforts taken at the [previous] hearing."); *Ramirez Tesara v. Wamsley*, No. C25-1723-KKE-TLF, 2025 WL 3288295, at *6 (W.D. Wash. Nov. 25, 2025) (directing immigration detainee's immediate release after he was re-detained following his parole's expiration); *see also Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("The typical remedy for [unlawful] detention is, of course, release."); *Thuraissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention.").

For all these reasons, the Amended Petition will be granted, and Petitioner will be ordered released from custody immediately.

**IT IS THEREFORE ORDERED** Petitioner's Amended Petition for Writ of Habeas Corpus (Doc. 4) is **granted** as to the due process claim in Count One.  The remainder of the Petition is denied as moot.

**IT IS FURTHER ORDERED** Respondents must immediately release Petitioner from custody under the same conditions that existed before his re-detention.

**IT IS FURTHER ORDERED** Respondents must provide a notice of compliance within two business days of Petitioner's release.

**IT IS FINALLY ORDERED** any pending motions are denied as moot and the Clerk of Court shall enter judgment in Petitioner's favor and close this case.

Dated this 17th day of March, 2026.

_____
Honorable Sharad H. Desai
United States District Judge